UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,
STATE OF CALIFORNIA,
STATE OF FLORIDA, STATE OF MISSOURI,
STATE OF TEXAS, and STATE OF
WASHINGTON,

              *Plaintiffs,*

   v.

COMCAST CORP., GENERAL ELECTRIC
CO., and NBC UNIVERSAL, INC.,

              *Defendants.*

CASE:  1:11-cv-00106
JUDGE:  Leon, Richard J.

## PLAINTIFF UNITED STATES'S RESPONSE TO PUBLIC COMMENTS

Pursuant to the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. §

16(b)-(h) ("APPA" or "Tunney Act"), the United States hereby files the public comments

concerning the proposed Final Judgment in this case and the United States's response to those

comments.  After careful consideration of the comments, the United States continues to believe

that the proposed Final Judgment will provide an effective and appropriate remedy for the

antitrust violations alleged in the Complaint.  The United States will move the Court, pursuant to

15 U.S.C. § 16(b)-(h), to enter the proposed Final Judgment after the public comments and this

Response have been published in the *Federal Register* pursuant to 15 U.S.C. § 16(d).

I.     **PROCEDURAL HISTORY**

On January 18, 2011, the United States and the States of California, Florida, Missouri,

Texas, and Washington ("the States"), filed a Complaint in this matter, alleging that the

formation of a Joint Venture ("JV") among Comcast Corporation ("Comcast"), General Electric

Company ("GE"), NBC Universal, Inc. ("NBCU"), and Navy, LLC, which gives Comcast

majority control over the NBC broadcast and NBCU cable networks, would substantially lessen

competition in the market for timely distribution of professional, full-length video programming

to residential consumers in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

Simultaneously with its filing of the Complaint, the United States filed a Competitive Impact

Statement ("CIS"), a proposed Final Judgment, and a Stipulation and Order signed by the United

States and the Defendants consenting to entry of the proposed Final Judgment after compliance

with the requirements of the APPA.

The proposed Final Judgment and CIS were published in the *Federal Register* on January

31, 2011.  *See* 76 Fed. Reg. 5,440 (2011).  A summary of the terms of the proposed Final

Judgment and CIS, together with directions for the submission of written comments relating to

the proposed Final Judgment, were published in *The Washington Post* for seven days, from

January 31, 2011 through February 7, 2011.  The Defendants filed the statement required by 15

U.S.C. §16(g) on April 18, 2011.  The 60-day period for public comments ended on April 9,

2011, and eight comments were received as described below and attached hereto, including a

comment from The American Antitrust Institute ("AAI"), a joint comment from The Consumers

Federation of America and Consumers Union ("CFA/CU"), and six comments from individuals.

## II.    THE INVESTIGATION AND PROPOSED RESOLUTION

### A.    Investigation

On December 3, 2009, Comcast, GE, NBCU and Navy LLC, entered into an agreement to form a JV to which Comcast and GE contributed their cable and broadcast networks, as well as NBCU's interest in Hulu, LLC.  Over the next 13 months, the United States Department of Justice ("Department") conducted a thorough and comprehensive investigation of the potential impact of the JV on the video programming distribution industry.  The Department interviewed more than 125 companies and individuals involved in the industry, obtained testimony from Defendants' officers, required Defendants to provide the Department with responses to numerous questions, reviewed over one million business documents from Defendants' officers and employees, obtained and reviewed tens of thousands of third-party documents, obtained and extensively analyzed large volumes of industry financial and economic data, consulted with industry and economic experts, organized product demonstrations, and conducted independent industry research.  The Department also consulted extensively with the Federal Communications Commission ("FCC") to ensure that the agencies conducted their reviews in a coordinated and complementary fashion and created remedies that were both comprehensive and consistent.  As part of its investigation, the Department also reviewed and considered many of the thousands of pages of comments filed in the FCC docket in this matter that raised competition issues, including but not limited to the comments filed by AAI and CFA/CU.[1]

---

[1]    *See, e.g.*, Comments of the American Antitrust Institute, *In re Applications of Comcast Corporation, General Electric Company, and NBC Universal, Inc. for Consent to Assign Licenses or Transfer Control of Licensees*, FCC MB Docket No. 10-56 (June 21, 2010) ("AAI's FCC Comments"); Reply to Opposition of Free Press, Media Access Project, Consumer Federation of America, and Consumer's Union, *In re Applications of Comcast Corporation, General Electric Company, and NBC Universal, Inc. for Consent to Assign Licenses or Transfer Control of Licensees*, FCC MB Docket No. 10-56 (Aug. 19, 2010).

**B.     Proposed Final Judgment**

The proposed Final Judgment is designed to preserve competition in the market for timely distribution of professional full-length video programming to residential consumers in the United States.  The proposed Final Judgment accomplishes this in a number of ways.  First, the proposed Final Judgment requires the JV to license its broadcast, cable, and film content to online video distributors ("OVDs") on terms comparable to those contained in similar licensing arrangements with traditional multichannel video programming distributors ("MVPDs") or OVDs.  It provides two options through which an OVD may be able to obtain the JV's content. The first option, set forth in Section IV.A of the proposed Final Judgment, requires the JV to license the linear feeds of the JV's video programming to OVDs on terms that are economically equivalent to the terms contained in certain MVPDs' video programming agreements.  The second option, set forth in Section IV.B of the proposed Final Judgment, requires the JV to license to a qualified OVD the broadcast, cable, or film content of the JV that is comparable in scope and quality to the content the OVD receives from one of the JV's defined programming peers.[2]  While the first option ensures that Comcast, through the JV, will not disadvantage OVD competitors in relation to MVPDs, the second option ensures that the programming licensed by the JV to OVDs will reflect the licensing trends of its peers as the industry evolves.  If an OVD and the JV are unable to reach an agreement for carriage of programming under either of these options, the OVD may apply to the Department to submit the dispute to baseball-style arbitration pursuant to Section VII of the proposed Final Judgment.[3]

---

[2]   The programming peers include the owners of the three major non-NBC broadcast networks (CBS, FOX, and ABC), the largest cable network groups (including News Corporation, Time Warner, Inc., Viacom, Inc., and The Walt Disney Company), and the six largest production studios (including News Corp., Viacom, Sony Corporation of America, Time Warner, and Disney).

[3]   "Baseball-style" arbitration is a method of alternative dispute resolution in which each party submits its preferred price and other terms, and the arbitrator selects the proposal that is most reasonable and fair in light of the relevant market.  The arbitrator must choose one party's proposal or the other's, with no option to implement a different set

Second, the proposed Final Judgment alters the JV's relationship with Hulu, LLC ("Hulu"), an OVD in which the JV owns a 32 percent interest. Hulu is one of the most successful OVDs to date. Section V.D of the proposed Final Judgment requires the Defendants to relinquish their voting and other governance rights in Hulu, and Section IV.E prohibits them from receiving confidential or competitively sensitive information concerning Hulu. At the same time, Section V.G of the proposed Final Judgment seeks to ensure that the JV continues to honor its commitments to supply programming to Hulu at levels commensurate with the supply of content provided to Hulu by its other media partners.

Third, the proposed Final Judgment prohibits Defendants from engaging in certain conduct that could prevent OVDs or MVPDs from competing effectively. Section V.A of the proposed Final Judgment prohibits Defendants from discriminating against, retaliating against, or punishing any content provider for providing programming to any OVD or MVPD. Section V.A also prohibits Defendants from discriminating against, retaliating against, or punishing any OVD or MVPD for obtaining video programming, for invoking any provisions of the proposed Final Judgment or any FCC rule or order, or for furnishing information to the Department concerning Defendants' compliance with the proposed Final Judgment.

Fourth, the proposed Final Judgment further protects the development of OVDs by preventing Comcast from using its position as the nation's largest MVPD or as the licensor, through the JV, of important video programming, to enter into agreements containing restrictive contracting terms. Sections V.B and V.C of the proposed Final Judgment set forth broad prohibitions on restrictive contracting practices, including exclusives, with appropriately tailored

---

of price and other terms, e.g., a compromise involving aspects of both. The name is derived from arbitrations of Major League Baseball player salary disputes in which this format has been employed for a number of years. The FCC has also adopted this format as part of the conditions set forth in several merger orders. *See, e.g.,* Memorandum Opinion and Order, *In re General Motors Corporation and Hughes Electronics Corporation, Transferors, and The News Corporation Limited, Transferee, for Authority to Transfer Control,* 19 F.C.C.R. 473, ¶ 222 (rel. Jan. 14, 2004), *available at* <http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-03-330A1.pdf>.

exceptions.  In so doing, the proposed Final Judgment strikes a balance between allowing reasonable and customary exclusivity provisions that enhance competition while prohibiting provisions that, without offsetting procompetitive benefits, hinder the development of effective competition from OVDs.

Fifth, Section V.G requires Comcast to abide by certain restrictions on the operation and management of its Internet facilities, which OVDs depend upon in order to deliver video content to OVD customers.  Absent such restrictions, Comcast would have the incentive and ability to undermine the effectiveness of the proposed Final Judgment by, for instance, giving priority to non-OVD traffic on its network, thus adversely affecting the quality of OVD services that compete with Comcast's OVD or MVPD services.

Finally, Sections IV.I-O and VIII.A-B of the proposed Final Judgment impose reporting and document retention requirements on the Defendants to better enable the Department to monitor compliance and to assist it in enforcement proceedings.

## III.   STANDARD OF JUDICIAL REVIEW

The APPA requires that proposed consent judgments in antitrust cases brought by the United States be subject to a sixty-day comment period, after which the court shall determine whether entry of the proposed Final Judgment "is in the public interest."  15 U.S.C. § 16(e)(1). In making that determination in accordance with the statute, the court is required to consider:

> (A) the competitive impact of such judgment, including termination of alleged violations, provisions for enforcement and modification, duration of relief sought, anticipated effects of alternative remedies actually considered, whether its terms are ambiguous, and any other competitive considerations bearing upon the adequacy of such judgment that the court deems necessary to a determination of whether the consent judgment is in the public interest; and

(B) the impact of entry of such judgment upon competition in the relevant market or markets, upon the public generally and individuals alleging specific injury from the violations set forth in the complaint including consideration of the public benefit, if any, to be derived from a determination of the issues at trial.

15 U.S.C. § 16(e)(1)(A)-(B).  In considering these statutory factors, the court's inquiry is

necessarily a limited one as the government is entitled to "broad discretion to settle with the

defendant within the reaches of the public interest." *United States v. Microsoft Corp.*, 56 F.3d

1448, 1461 (D.C. Cir. 1995).  *See generally United States v. SBC Commc'ns, Inc.*, 489 F. Supp.

2d 1 (D.D.C. 2007) (assessing public interest standard under the Tunney Act); *United States v.

InBev N.V./S.A.*, 2009-2 Trade Cas. (CCH) ¶ 76,736, No. 08-1965 (JR), 2009 U.S. Dist. LEXIS

84787, at *3 (D.D.C. Aug. 11, 2009) (noting that the court's review of a consent judgment is

limited and only inquires "into whether the government's determination that the proposed

remedies will cure the antitrust violations alleged in the complaint was reasonable, and whether

the mechanisms to enforce the Final Judgment are clear and manageable").

   As the United States Court of Appeals for the District of Columbia Circuit has held,

under the APPA, a court considers, among other things, the relationship between the remedy

secured and the specific allegations set forth in the government's complaint, whether the decree

is sufficiently clear, whether enforcement mechanisms are sufficient, and whether the decree

may positively harm third parties.  *See Microsoft*, 56 F.3d at 1458-62.  With respect to the

adequacy of the relief secured by the decree, a court may not "engage in an unrestricted

evaluation of what relief would best serve the public." *United States v. BNS, Inc.*, 858 F.2d 456,

462 (9th Cir. 1988) (citing *United States v. Bechtel Corp.*, 648 F.2d 660, 666 (9th Cir. 1981));

*see also Microsoft*, 56 F.3d at 1460-62; *United States v. Alcoa, Inc.*, 152 F. Supp. 2d 37, 40

(D.D.C. 2001); *InBev*, 2009 U.S. Dist. LEXIS 84787, at *3.  Courts have held that:

> [t]he balancing of competing social and political interests affected by a proposed antitrust consent decree must be left, in the first instance, to the discretion of the Attorney General. The court's role in protecting the public interest is one of insuring that the government has not breached its duty to the public in consenting to the decree. The court is required to determine not whether a particular decree is the one that will best serve society, but whether the settlement is "*within the reaches of the public interest.*" More elaborate requirements might undermine the effectiveness of antitrust enforcement by consent decree.

*Bechtel*, 648 F.2d at 666 (emphasis added) (citations omitted).[4]  In determining whether a proposed settlement is in the public interest, the court "must accord deference to the government's predictions about the efficacy of its remedies, and may not require that the remedies perfectly match the alleged violations." *SBC Commc'ns*, 489 F. Supp. 2d at 17; *see also Microsoft*, 56 F.3d at 1461 (noting the need for courts to be "deferential to the government's predictions as to the effect of the proposed remedies"); *United States v. Archer-Daniels-Midland Co.*, 272 F. Supp. 2d 1, 6 (D.D.C. 2003) (noting that the court should grant due respect to the United States's prediction as to the effect of proposed remedies, its perception of the market structure, and its views of the nature of the case).

Courts have greater flexibility in approving proposed consent decrees than in crafting their own decrees following a finding of liability in a litigated matter. "[A] proposed decree must be approved even if it falls short of the remedy the court would impose on its own, as long as it falls within the range of acceptability or is 'within the reaches of public interest.'" *United States v. Am. Tel. & Tel. Co.*, 552 F. Supp. 131, 151 (D.D.C. 1982) (citations omitted) (quoting *United States v. Gillette Co.*, 406 F. Supp. 713, 716 (D. Mass. 1975)), *aff'd sub nom. Maryland v. United States*, 460 U.S. 1001 (1983); *see also United States v. Alcan Aluminum Ltd.*, 605 F.

---

[4]  *Cf. BNS*, 858 F.2d at 464 (holding that the court's "ultimate authority under the [APPA] is limited to approving or disapproving the consent decree"); *United States v. Gillette Co.*, 406 F. Supp. 713, 716 (D. Mass. 1975) (noting that, in this way, the court is constrained to "look at the overall picture not hypercritically, nor with a microscope, but with an artist's reducing glass"). *See generally Microsoft*, 56 F.3d at 1461 (discussing whether "the remedies [obtained in the decree are] so inconsonant with the allegations charged as to fall outside of the 'reaches of the public interest'").

Supp. 619, 622 (W.D. Ky. 1985) (approving the consent decree even though the court would have imposed a greater remedy).  As this Court has previously recognized, to meet this standard "[t]he government need not prove that the settlements will perfectly remedy the alleged antitrust harms, it need only provide a factual basis for concluding that the settlements are reasonably adequate remedies for the alleged harms." *United States v. Abitibi-Consolidated Inc.*, 584 F. Supp. 2d 162, 165 (D.D.C. 2008) (citing *SBC Commc'ns*, 489 F. Supp. 2d at 17).

Moreover, the Court's role under the APPA is limited to reviewing the remedy in relationship to the violations that the United States has alleged in its complaint, rather than to "construct [its] own hypothetical case and then evaluate the decree against that case." *Microsoft*, 56 F.3d at 1459.  Because the "court's authority to review the decree depends entirely on the government's exercising its prosecutorial discretion by bringing a case in the first place," it follows that "the court is only authorized to review the decree itself," and not to "effectively redraft the complaint" to inquire into other matters that the United States did not pursue. *Id.* at 1459-60.  As this Court recently confirmed in *SBC Communications*, courts "cannot look beyond the complaint in making the public interest determination unless the complaint is drafted so narrowly as to make a mockery of judicial power." *SBC Commc'ns*, 489 F. Supp. 2d at 15.

In its 2004 amendments to the Tunney Act,[5] Congress made clear its intent to preserve the practical benefits of utilizing consent decrees in antitrust enforcement, stating "[n]othing in this section shall be construed to require the court to conduct an evidentiary hearing or to require the court to permit anyone to intervene." 15 U.S.C. § 16(e)(2).  The clause reflects what Congress intended when it enacted the Tunney Act in 1974, as Senator Tunney explained: "[t]he

---

[5]  The 2004 amendments substituted the word "shall" for "may" when directing the courts to consider the enumerated factors and amended the list of factors to focus on competitive considerations and address potentially ambiguous judgment terms. *Compare* 15 U.S.C. § 16(e) (2004), *with* 15 U.S.C. § 16(e)(1) (2006); *see also SBC Commc'ns*, 489 F. Supp. 2d at 11 (concluding that the 2004 amendments "effected minimal changes" to Tunney Act review).

court is nowhere compelled to go to trial or to engage in extended proceedings which might have the effect of vitiating the benefits of prompt and less costly settlement through the consent decree process." 119 Cong. Rec. 24,598 (1973) (statement of Senator Tunney).  Rather, the procedure for the public-interest determination is left to the discretion of the court, with the recognition that the court's "scope of review remains sharply proscribed by precedent and the nature of Tunney Act proceedings." *SBC Commc'ns*, 489 F. Supp. 2d at 11.

## IV.   SUMMARY AND RESPONSE TO PUBLIC COMMENTS

During the 60-day public comment period, the United States received comments from the following associations and individuals:  The American Antitrust Institute ("AAI"); The Consumers Federation of America and Consumers Union ("CFA/CU"), filing jointly; and Noelle Levesque, Chris Muse, David Neckolaishen, Denna Teece, Ira Warren Patasnik, and Bill Dunn. Upon review, the United States believes that nothing in these comments demonstrates that the proposed Final Judgment is not in the public interest.  Indeed, the joint comments filed by CFA/CU outline the numerous public benefits flowing from the proposed Final Judgment.  What follows is a summary of the comments and the United States's responses to those comments.

### A.    AAI

AAI describes itself as "an independent Washington-based non-profit education, research, and advocacy organization."[6]  AAI's membership is comprised primarily of antitrust lawyers and economists.  It is managed by a Board of Directors that authorized the filing of its comments in this proceeding.[7]

---

[6]  Tunney Act Comments of the American Antitrust Institute on the Proposed Final Judgment, *United States, et al, v. Comcast Corp., et al.*, No. 1-11-cv-00106 (RJL) (D.D.C.), at 2 (Mar. 29, 2011) ("AAI Comments").  These comments are attached as Exhibit A.
[7]  *Id.* 2.

AAI argues that because the proposed Final Judgment contains conduct remedies, it fails to match the allegations of the Complaint with an appropriate cure and thereby diverges from the Department's *Antitrust Division Policy Guide to Merger Remedies* and from longstanding policy in vertical merger cases.[8]  AAI's statement of Department policy is incorrect.  The Department has long recognized that there may be certain situations, i.e., vertical mergers in particular, "where a structural remedy is infeasible."[9]  In such cases, the Department's choice "necessarily will come down to stopping the transaction or imposing a conduct remedy."[10]  The Department analyzes each merger according to its unique facts.  In this case, the Department determined that the transaction would result in anticompetitive harm and that the harm was not outweighed by merger-specific efficiencies.  Contrary to AAI's comments, the Complaint does not allege that there were *no* efficiencies associated with the transaction.  Rather, the Complaint alleges that "[t]he proposed JV will not generate verifiable, merger-specific efficiencies sufficient to reverse the competitive harm of the proposed JV."[11]  The proposed Final Judgment cures the anticompetitive harm while preserving the potential efficiencies flowing from the transaction.

AAI also criticizes the proposed Final Judgment's licensing provisions as "requir[ing] ongoing oversight, monitoring, and compliance" that antitrust enforcers and courts are "woefully" equipped to handle.[12]  This criticism ignores the proposed Final Judgment's

---

[8]  *Id.* at 5.

[9]  U.S. Dep't of Justice, *Antitrust Division Policy Guide to Merger Remedies*, at 21 (Oct. 2004) ("*Antitrust Division Remedies Guide*").  The *Antitrust Division Remedies Guide* clarifies the policy considerations behind the Department's merger remedies.  It expressly states that conduct remedies may provide effective relief for the likely anticompetitive effects of some vertical mergers.  *Id.*  Indeed, the Department has imposed conduct remedies in decrees pertaining to previous transactions involving vertical elements.  *See, e.g.*, Final Judgment, *United States v. Northrop Grumman Corp. et al.*, 2003-1 Trade Cas. (CCH) ¶ 74,057 (D.D.C. June 10, 2003), 2003 WL 21659404.

[10]  *Antitrust Division Remedies Guide* at 22.

[11]  Complaint, *United States, et al. v. Comcast Corp., et al.*, No. 1-11-cv-00106 (RLJ), ¶ 56 (D.D.C. filed Jan. 18, 2011).

[12]  AAI Comments at 11.  AAI's criticism is disingenuous.  Elsewhere in its comments, AAI suggests that a conduct remedy involving "[w]alling off management decisions on the programming side of the JV from decisions on the distribution side will help prevent foreclosure of OVDs."  *Id.* at 19-20.  AAI does not explain how or why the proposed Final Judgment's conduct remedies are less likely to be successful than AAI's proposed conduct remedy.

incorporation of an arbitration mechanism to resolve any disputes over whether the JV is meeting

its obligations under the proposed Final Judgment to license popular NBCU content to

competitors.   Arbitration is commonly used to resolve such disputes, and the arbitration

mechanism incorporated in the proposed Final Judgment should prevent the Department, or the

Court, from being unnecessarily embroiled in difficult issues.[13]

AAI further argues that the proposed Final Judgment contains requirements with

subjective terms that "will open the door to disputes . . . ."[14]  Any remedy, particularly one that

involves a rapidly changing, high-technology market, will necessarily contain some open-ended

or subjective terms to preserve needed flexibility.  Arms-length negotiations should resolve most

issues regarding these terms.  The proposed Final Judgment sets out a general framework of

access with a backstop of baseball-style arbitration.  Unlike the FCC's arbitration provisions,

which are appealable, arbitration under the proposed Final Judgment is binding on the parties.

Thus, the parties have an increased incentive under the proposed Final Judgment to reach a

commercial agreement without intervention by a third-party arbitrator.  To the extent that the

parties cannot reach agreement, an aggrieved OVD may appeal to the Department for the right to

arbitrate.  Under baseball-style arbitration, both parties submit their best offers to a neutral, third-

party arbitrator who then decides which of the two offers is more reasonable based upon

evidence in the record, including contracts with other parties.  Baseball-style arbitration has been

---

[13]   AAI's criticism also ignores the ongoing regulation and oversight of this industry by the FCC.  Indeed, the FCC has imposed licensing conditions on the Defendants similar to those contained in the proposed Final Judgment.  *See* Memorandum Opinion and Order, *In re Applications of Comcast Corp., General Electric Co. and NBC Universal, Inc. for Consent to Assign Licenses and Transfer Control of Licensees*, FCC MB Docket No. 10-56, 2011 WL 194538 (rel. Jan. 20, 2011), *available at* < http://www.fcc.gov/Daily_Releases_Business/2011/db0309/FCC-11-4A1.pdf>.
[14]   AAI Comments at 13.

successfully employed as a vertical merger remedy pursuant to numerous FCC orders[15] and there is no evidence that it will not be an effective remedy in this case.

AAI also claims that the proposed Final Judgment relies on static benchmarks that fail to account for change in an emerging and dynamic OVD industry.[16] AAI is mistaken. The proposed Final Judgment explicitly recognizes that online video distribution is in its infancy and that the identity of new competitors, and the terms and conditions under which providers of programming will contract with them, may change. The proposed Final Judgment, therefore, sets forth different scenarios under which OVDs may seek video programming from the JV, both now and in the future. For example, Section IV.B.6 of the proposed Final Judgment sets forth different scenarios under which a Qualified OVD may seek additional video programming from the JV. Similarly, Section IV.B.7 defines the circumstances under which an OVD that subsequently becomes a Qualified OVD may seek new or additional video programming from the JV. Finally, Section IV.G which governs the JV's provision of video programming to Hulu, contemplates that the JV will enter agreements with Hulu on substantially the same terms and conditions as those of the broadcast owner whose renewed agreement is most economically advantageous to Hulu.

With respect to Hulu, AAI further argues that the proposed Final Judgment's delegation of voting rights in Hulu to the non-JV partners compromises the development of Hulu.[17] Although there is no question that Fox and ABC have a greater say in Hulu as a consequence of the proposed Final Judgment's requirement that Comcast vote its shares in line with their votes,

---

[15]  *See, e.g.,* Memorandum Opinion and Order, *In re The DirecTV Group and Liberty Media Corp., Applications for Transfer of Control,* 23 F.C.C.R. 3265, 3342-49 (2008); Memorandum Opinion and Order, *In re Adelphia Communications Corp., Time Warner Cable Inc., and Comcast Corp., Applications for Transfer of Control,* 21 F.C.C.R. 8203, 8337-40 (2006); Memorandum Opinion and Order, *In re General Motors Corporation, Hughes Electronics Corporation, and News Corporation, Applications for Transfer of Control,* 19 F.C.C.R. 473, 677-82 (2004).

[16]  AAI Comments at 15.

[17]  *Id.* at 17.

AAI has not explained how this requirement is harmful to Hulu's development.  The integrated Comcast-NBCU has different incentives vis-à-vis Hulu than does a standalone NBCU.  By requiring the JV to relinquish its voting rights in Hulu to the non-JV partners, the proposed Final Judgment does not deprive the decision-making process of an "independent" non-voting member but, rather, restores how a standalone media partner would have voted with respect to Hulu. Additionally, Hulu, whose future competitiveness AAI purports to protect, does not object to the delegation of voting rights.

Ultimately,  AAI's comments boil down to the argument that other remedies would be better than those contained in the proposed settlement.  At some points, AAI contends that nothing short of a full prohibition of the merger would be adequate to redress the harm alleged in the Complaint.[18]  At other points, it suggests a variety of modifications to the proposed Final Judgment. [19]  Although AAI concedes that "this Court is not authorized to re-write the consent decree," it appears to invite the Court to do exactly that.  However, the Department in a Tunney Act proceeding must show only that the settlement is "within the range of acceptability or 'within the reaches of the public interest.'"[20]  As set forth in the CIS and as discussed above, the Department believes that the proposed Final Judgment is not only "reasonably adequate,"[21] but that it provides effective, carefully tailored relief that will prevent  the anticompetitive harms

---

[18]  *See* AAI Comments at 4, 18.  This argument is not new.  As noted above, AAI previously filed comments with the FCC in which encouraged the Commission to deny approval of the Comcast/NBCU transaction.  AAI's FCC Comments at 7, 26.

[19]  *See, e.g.,* AAI Comments at 19.

[20]  *See United States v. Am. Tel. & Tel. Co.*, 552 F. Supp. 131, 151 (D.D.C. 1982) (citations omitted) (quoting *United States v. Gillette Co.*, 406 F. Supp. 713, 716 (D. Mass. 1975)), *aff'd sub nom. Maryland v. United States*, 460 U.S. 1001 (1983); *see also, e.g., SBC Commc'ns*, 489 F. Supp. 2d at 17 ("Further, the Court must accord deference to the government's predictions about the efficacy of its remedies, and may not require that the remedies perfectly match the alleged violations because this may only reflect underlying weakness in the government's case or concessions made during negotiation." ).  In this case, the Department concluded that entry of the proposed Final Judgment was preferable to incurring the costs and risks associated with seeking an injunction to block the transaction, especially since the former may allow the realization of merger-specific efficiencies.

[21]  *See SBC Commc'ns*, 489 F. Supp. 2d at 17.

alleged in the Complaint.   Nothing in AAI's comments should dissuade this Court from concluding that entry of the proposed Final Judgment is in the public interest.

**B.    CFA/CU**

The Consumers Federation of America ("CFA") is an association of three hundred non-profit organizations that promote consumer issues through research, education, and advocacy.[22] Consumers Union ("CU"), the publisher of *Consumer Reports*, is a non-profit that provides consumers with information, education, and policy advice on a range of issues affecting consumer health and welfare.[23]  Both CFA and CU met with the Department and filed comments with the FCC relating to this transaction.[24]  While CFA/CU's "initial take" on the acquisition was that it should be blocked, CFA/CU now believes that the "the FCC and the DOJ have put together a set of conditions and enforcement measures that . . . protect consumers and promote the public interest."[25]  Specifically, CFA/CU argues that the proposed Final Judgment's licensing conditions, which require the JV to match the best practices of its peers, as well as the proposed Final Judgment's prohibitions on restrictive contracting practices, will better ensure the availability of programming for online video distribution.[26]  CFA/CU not only believes that the licensing provisions are enforceable, but that the proposed Final Judgment provides the Defendants with strong incentives to reach commercially reasonable agreements without invoking enforcement mechanisms.[27]  For these and other reasons, CFA/CU concludes that

---

[22]  *See* Tunney Act Comments of Consumer Federation of America and Consumers Union, *United States, et al., v. Comcast Corp., et al.*, No. 1-11-cv-00106 (RJL) (D.D.C.), at 1 n.1 (Apr. 1, 2011) ("CFA/CU Comments").   These comments are attached as Exhibit B.
[23]  *Id.*
[24]  *See supra note* 1.
[25]  CFA/CU Comments at 2.
[26]  *See id.* at 4.
[27]  *Id.* at 4-5.

"[c]onsumers and competition will be better off as a result of the judgment than if the merger had been denied."[28]

## C.    Additional Comments

The United States also received comments from six citizen complainants.[29]  The citizen complainants generally argue that the Department should not have allowed the transaction to have gone forward.  None of these comments raises substantive issues regarding the efficacy of the relief contained in the proposed Final Judgment to remedy the competitive harm in the market for distribution of full-length professional video programming to residential consumers alleged in the Complaint.

---

[28]   *Id.* at 5.
[29]   The citizen complainants are Noelle Levesque, Chris Muse, David Neckolaishen, Denna Teece, Ira Warren Patasnik, and Bill Dunn.  Their comments are attached as Exhibits C-H.  Pursuant to a specific request, the Department has redacted the e-mail and mailing addresses of the citizen complainants.

## V.      CONCLUSION

After careful consideration of the public comments, the United States concludes that

entry of the proposed Final Judgment will provide an effective and appropriate remedy for the

antitrust violations alleged in the Complaint and is therefore in the public interest.  The relatively

small number of comments filed by persons objecting to the settlement, especially when weighed

against the size and complexity of the transaction, is itself indicative of the adequacy of the

proposed Final Judgment.  Accordingly, after the comments and this response are published, the

United States will move this Court to enter the proposed Final Judgment.


Dated:  June 6, 2011

Respectfully submitted,


_____/s_____
Yvette F. Tarlov
(D.C. Bar #442452)
Attorney
Telecommunications & Media Enforcement
Section
Antitrust Division
U.S. Department of Justice
450 Fifth Street, N.W., Suite 7000
Washington, DC  20530
Telephone: (202) 514-5621
Facsimile: (202) 514-6381
Email:  Yvette.Tarlov@usdoj.gov
