UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| STATE OF CALIFORNIA, | ) |
| STATE OF FLORIDA, | ) |
| STATE OF MISSOURI, | ) |
| STATE OF TEXAS, and | ) |
| STATE OF WASHINGTON, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Case No. 11-106 (RJL) |
| | ) |
| COMCAST CORP., GENERAL | ) |
| ELECTRIC CO., and NBC | ) |
| UNIVERSAL, INC., | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM ORDER
(September _1_, 2011) [Dkt. #25]

BACKGROUND

This case is before the Court on the United States' Motion to Enter Final Judgment [Dkt. #25]. In January 2011, plaintiffs United States of America ("the Government") and the States of California, Florida, Missouri, Texas, and Washington ("plaintiffs"), brought a civil anti-trust[1] action to permanently enjoin a proposed joint venture and related transactions, purportedly worth $30 billion, between defendant Comcast Corporation

---

[1] The Government brought suit under Section 15 of the Clayton Act, 15 U.S.C. § 25, to "prevent and restrain [defendants] from violating Section 7 of the Clayton Act, 15 U.S.C. § 18." Compl. ¶ 11. Plaintiff states brought suit under Section 16 of the Clayton Act, 15 U.S.C. § 26. *Id.*

1

("Comcast" or "defendant") and General Electric Company ("GE" or "defendant") that would allow Comcast, the largest cable company in the United States, to control, among other things, popular video programming which included NBC Television Network ("NBC broadcast network") and the cable networks of NBC Universal, Inc. ("NBCU" or "defendant"). Complaint ("Compl."), Jan. 18, 2011 [Dkt. #1]. The Government simultaneously issued a Competitive Impact Statement contending that under the proposed merger, Comcast would obtain majority control of highly valued video programming that would prevent rival video-distribution companies from competing against the post-merger entity. *See* Competitive Impact Statement at 1, Jan. 18, 2011 [Dkt. #4].

On February 20, 2011, this Court signed a Stipulation and Order [Dkt. #21], pursuant to which the defendants agreed to abide by the provisions of a proposed Final Judgment that would allow the merger to go forward, while also putting into place certain remedies for what the Government alleged was anti-competitive behavior. Defendants also agreed to comply with the requirements of the Antitrust Procedures and Penalties Act ("APPA"), 15 U.S.C. § 16, including publishing – at defendants' expense – newspaper notice of the merger, a summary of its terms, and a copy of the proposed Final Judgment. Stipulation and Order at ¶¶ 2-3; *see also* Pl. United States' Response to Public Comments, June 6, 2011 [Dkt. #23]. On April 18, 2011, defendants filed a Report and Certification of Compliance with Tunney Act Requirements ("Report") [Dkt. #22], in which they certified compliance with Section 2(g) of the APPA and detailed communications by or on behalf of defendants with the United States regarding the Final

2

Judgment. *See* Report at 1. On June 6, 2011, the Government filed a Response to Public Comments ("Response") [Dkt. #23] in which it summarized and responded to the eight public comments filed after the sixty-day notice required by the APPA. Resp. at 2. After analyzing the public comments, the United States professed a continued "belie[f] that the proposed Final Judgment will provide an effective and appropriate remedy for the antitrust violations alleged in the Complaint." *Id.* at 1.

Then, on June 29, 2011, the Government filed a Certificate of Compliance with Provisions of the Antitrust Procedures and Penalty Act [Dkt. #24], wherein it certified compliance with all requirements of APPA Sections 16(b)-(h) and requested that the Court make the necessary public-interest determinations required by 15 U.S.C. § 16(e) and, ultimately, enter the proposed Final Judgment.

This Court held a fairness hearing on July 27, 2011. *See* Minute Entry, Case 11-cv-106, July 27, 2011. The parties were given the opportunity to present oral argument and to answer the Court's questions. Upon conclusion of the fairness hearing, the Government filed a Supplemental Statement In Support of Entry of the Final Judgment ("Supp. Stmt."), Aug. 5, 2011 [Dkt. #26], in which it further explained the proposed Final Judgment and renewed its request for this Court to enter Final Judgment.

Upon review of the pleadings, the record, and the applicable law, the Court determines that entry of the proposed Final Judgment is in the public interest and therefore GRANTS the Government's Motion for Entry of Final Judgment [Dkt. #25]. However, given a number of potential uncertainties regarding the Final Judgment's implementation, and consistent with this Court's "jurisdiction to issue orders and

directions necessary and appropriate to carry out or construe any provision of the Final Judgment and to 'enforce compliance, and to punish violations of its provisions,'" Supp. Stmt. at 6 (quoting Final Judgment § IX), I hereby order that certain future steps, described herein, be taken for no less than two years to ensure that the public interest continues to be served.

## STANDARD OF REVIEW

Before entering any consent judgment offered by the United States under 15 U.S.C. § 16(e), this Court must determine whether entry of the judgment "is in the public interest." To make that determination, the Court shall consider:

> "(A) the competitive impact of such judgment, including termination of alleged violations, provisions for enforcement and modification, duration of relief sought, anticipated effects of alternative remedies actually considered, whether its terms are ambiguous, and any other competitive considerations bearing upon the adequacy of such judgment that the court deems necessary to a determination of whether the consent judgment is in the public interest; and
>
> (B) the impact of entry of such judgment upon competition in the relevant market or markets, upon the public generally and individuals alleging specific injury from the violations set forth in the complaint including consideration of the public benefit, if any, to be derived from a determination of the issues at trial." 15 U.S.C. § 16(e).

## ANALYSIS

On July 27, 2011, the Court held a public hearing during which the Government and defendants presented arguments as to why entry of Final Judgment was in the public interest. In essence, both sides relied upon their assessment that the Final Judgment was carefully crafted by all parties to facilitate a merger, consistent with the existing antitrust

4

laws, that carefully protected the public's interest by maintaining the competitive equilibrium of the emerging online-video market.

While asking the parties questions at that hearing, however, I grew increasingly concerned that the Government's non-appealable arbitration mechanism for online video distributors ("OVDs") did not serve the public interest. *See, e.g.,* Fairness Hearing Transcript ("Tr."), July 27, 2011, at 23. Moreover, I was unsure whether the proposed Final Judgment adequately empowered the Department of Justice to enforce the terms of the agreement. *See, e.g., id.* at 5-6.

Not surprisingly, the Government filed a Supplemental Statement after the hearing in which it described, in detail, the dual-track arbitration mechanism OVDs may use to acquire Comcast and NBCU content under certain conditions.[2] *See* Supplemental Statement ("Supp. Stmt.") [Dkt. #26]. To start, the Government clarified that OVDs have two options for arbitration: the FCC process, and the new process outlined in the proposed Final Judgment. *Id.* at 2. Arbitration under the FCC Order, they stressed, is a matter of right, *see* Supp. Stmt. at 4 (citing FCC Order, App. A, §§ IV.A.3, VII.A, VII.C), and is appealable, whereas arbitration under the proposed Final Judgment is not.[3] *Id.* at 4-5. And although an OVD which is dissatisfied with its result in an FCC

---

[2]   The Government's Supplemental Statement also offers a helpful and satisfactory explanation of the logistics and benefits of "baseball-style" arbitration. *See* Supp. Stmt. at 3 n.4.

[3]   The Government contends, however, that arbitration under the proposed Final Judgment offers a valuable tradeoff: expedited and final resolution. *See, e.g.,* Supp. Stmt. at 2, 5-6.

arbitration may *not* then take a second bite at the apple by requesting arbitration under the proposed Final Judgment, an OVD whose requested arbitration under the proposed Final Judgment is denied[4] by the Department of Justice may still proceed as a matter of right with arbitration under the FCC Order. See Supp. Stmt. at 5.

Of course, the Government contends that because the "FCC is the expert communications industry regulator . . . OVD requests will ordinarily proceed through the FCC [arbitration] process." Supp. Stmt. at 5; *see also id.* at 2. Even if this is true, however, the Government concedes that there is still "some uncertainty about the ability of OVDs to obtain timely relief under the FCC Order." *Id.* at 5. Thus, it remains to be seen how well the FCC arbitration process will work for OVDs, and how many of the OVDs who request – and are denied – arbitration under the new streamlined approached created by the proposed Final Judgment will pursue relief under the FCC Order.

Moreover, because of the way the Final Judgment is structured, the Government's ability to "enforce" the Final Judgment, and, frankly, this Court's ability to oversee it, are, to say the least, limited. Indeed, notwithstanding the fact that the Final Judgment vests the Government with the "responsibility" to investigate and report to the Court the complaint of an OVD alleging "fraud or malfeasance" in the proposed arbitration process, Supp. Stmt. 6 (citing Final Judgment § IX); *see also* Tr. at 5-6, 8-9, the

---

[4] Under the arbitration proposed in the Final Judgment, an OVD must first seek permission from the United States to arbitrate under this "alternative" yet "complementary" mechanism. Supp. Stmt. at 4-5 (citing Proposed Final Judgment § VII.C). If the Government allows arbitration to move forward, any arbitration award is non-appealable. *Id.* at 4. If the Government denies an OVD's request to arbitrate, the OVD may still initiate arbitration under the FCC Order, which is available as a matter of right and is appealable. *Id.* at 3-4.

Government, at the public hearing, freely admitted that "[w]e can't enforce this decree." Tr. at 11:14. In addition, it is undisputed that neither the FCC nor the Department of Justice has any experience yet in administering either course of arbitration in the online-video-distribution context. *See, e.g.,* Supp. Stmt. at 5; *see also* Tr. at 10:8 (Government's admission that "this is a nascent market" and that "[t]hese are nascent competitors"). And despite the Government's assurances that "this Court retains jurisdiction to issue orders and directions necessary and appropriate to carry out or construe any provision of the Final Judgment," Supp. Stmt. at 6, and "to enforce compliance, and to punish violations of its provisions," *id.* (citing Final Judgment § IX), I am not completely certain that these safeguards, *alone*, will sufficiently protect the public interest in the years ahead.

Accordingly, since neither the Court nor the parties has a crystal ball to forecast how this Final Judgment, along with its arbitration mechanisms, will actually function, *see* Tr. at 22, I believe that certain additional steps are necessary to monitor implementation of the Final Judgment to ensure that it satisfies the public-interest requirement mandated by statute. *See* 15 U.S.C. § 16(e). Therefore, pursuant to the authority Section IX of the Final Judgment vests in this Court, and to ensure that the Final Judgment is, and continues to be, in the public interest, it is hereby

**ORDERED** that for no less than two years, the parties shall create and maintain a report which details (a) how many OVDs initiate arbitration under the FCC Order and the result of those arbitrations; (b) how many times OVDs appeal the result of their arbitration, and to which judicial bodies, if any, they appeal; (c) how many OVDs seek

permission from the Department of Justice to arbitrate under the Final Judgment and how many are granted permission; and (d) how many times the United States denies an OVD's request to initiate arbitration under the Final Judgment, and how many of those denied subsequently elect to initiate arbitration under the FCC Order.  It is further

**ORDERED** that the United States shall prepare this report and share it with all parties in advance of a yearly hearing before this Court; and it is further

**ORDERED** that the parties shall convene for an annual hearing with this Court to explain and discuss the report and any other non-arbitration-related issues that may have arisen during the previous year to ensure that the Final Judgment does, and continues to, satisfy the public interest.

**SO ORDERED.**

_____
RICHARD J. LEON
United States District Judge